2022 IL App (2d) 220072
No. 2-22-0072
Opinion filed November 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| ASHER FARM LIMITED PARTNERSHIP, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-CH-83 |
| | ) | |
| KENNETH C. WOLSFELD, Individually and | ) | |
| As Trustee of Kenneth C. Wolsfeld Trust | ) | |
| No. 101, | ) | Honorable |
| | ) | Kevin T. Busch, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1     In this appeal, we consider whether the circuit court erred by dismissing with prejudice the complaint plaintiff, Asher Farm Limited Partnership, filed to quiet title to a parcel of real estate it was claiming by adverse possession. We also consider whether the court abused its discretion by ordering plaintiff to pay to defendant, Kenneth C. Wolsfeld, individually and as trustee of Wolsfeld Trust No. 101, $810 as sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). Finally, we consider defendant's request for appellate sanctions. We affirm and grant defendant's request.

¶ 2                                  I. BACKGROUND

¶ 3       On December 11, 2020, defendant purchased a parcel of real estate in Big Rock Township that was adjacent and contiguous on its eastern boundary to a parcel that, according to plaintiff's complaint, had been owned and farmed by plaintiff and its predecessors in title for more than 50 years. A short time later, around February 1, 2021, defendant removed a common fence, which sat upon a grass row, that had been in place and acted as a boundary line between the two parcels for more than 50 years. Based on a survey defendant obtained in connection with his purchase of the property, defendant claimed as his own the entire fence line, the grass row, and a tract of real estate to its east.

¶ 4       On April 1, 2021, plaintiff sued defendant to quiet title to the disputed tract, alleging it had acquired title to the disputed tract by adverse possession, in that it had occupied, used, and maintained the tract openly, continuously, exclusively, and without interruption since 1964. On April 15, 2021, plaintiff moved for a preliminary injunction, alleging that, on April 6, 2021, defendant removed the grass row and began preparing it for cultivation. Plaintiff sought, among other relief, an order barring defendant from farming the disputed tract.

¶ 5       On June 21, 2021, the parties appeared for a settlement conference. At the conclusion of the conference, the parties advised the circuit court they had agreed to terms. The court continued the matter to September 20, 2021, for status. On that date, the court again continued the matter to November 22, 2021, for status.

¶ 6       On November 19, 2021, defendant moved to dismiss the complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)) and for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). In his motion, defendant asserted that, though the complaint alleged *plaintiff* was the owner of the real estate adjacent and contiguous to their property, the real estate was, in fact, *owned by four trusts* (the Landmeier trusts): (1) the Valerie

Landmeier 1992 Wheeler Road Trust Dated June 22, 1992; (2) the Jason Landmeier 1992 Wheeler Road Trust Dated June 22, 1992; (3) the Hilary Landmeier 1992 Wheeler Road Trust Dated June 22, 1992; and (4) the Heather Landmeier 1992 Wheeler Road Trust Dated June 22, 1992. Thus, defendant asserted, one entity (plaintiff) *farmed* the land and the other entities (the Landmeier trusts) *owned* the land, and, as the owners, the Landmeier trusts were the proper plaintiffs. Defendant also asserted the real estate legally described in the exhibit to plaintiff's complaint was "the incorrect parcel of land in dispute." According to defendant, plaintiff's attorney verbally acknowledged that plaintiff was not the proper party to bring the complaint and that the incorrect parcel of land was identified in the complaint.

¶ 7     Thus, defendant maintained, the complaint was defective as a matter of law (735 ILCS 5/2-615 (West 2020)) and must be dismissed. On this same basis, defendant argued plaintiff lacked standing (735 ILCS 5/2-619(a)(9)) (West 2020)).[1]

¶ 8     On November 22, 2021, the parties appeared for status and presentment of defendant's motion. The court recalled that the matter had been settled, and defendant's attorney responded that defendant was frustrated because, though the matter was settled, the parties had not been able to "get [it] over the finish line." Defendant's attorney told the court,

> "[A]s you may recall, when we began that pretrial conference we were discussing
>
> the nature of this case. I said one thing that I think [defendant] will succeed on is that

---

[1] Defendant cited subsection (a)(2) of section 2-619 (735 ILCS 5/2-619(a)(2) (West 2020)), but lack of standing is properly brought under subsection (a)(9) (*id.* § 2-619(a)(9)). See *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999).

[plaintiff is] not going to be able to properly identify this property because it was improperly identified in the complaint and the parties.

But for the sake of efficiency we do agree that there is a piece of property that exists; that there was a dispute about it; it was just incorrectly identified. So we said okay, let's move forward.

We didn't hear anything so we drafted deeds; we drafted the settlement agreement; we sent it to counsel. And we have been sitting since September, early September, August.

My client has a settlement check at our office. If there are comments, we need to— we need to know. And just nothing has moved forward, so we filed a motion to dismiss and asked for sanctions."

¶ 9 Defendant's attorney then explained the basis for the request for sanctions:

"Improper/unnecessary delays; not conducting enough due diligence to properly identify the parcels and the plaintiffs; and also, we notified [plaintiff] that [it] now [had] a complaint on file that [did] not have the correct parties[ ] named or the parcel identified[,] so it should be dismissed with prejudice and [plaintiff had] declined to do that, as well. It means we need[ed] to keep coming back to court."

¶ 10 The court set a briefing schedule on defendant's motion and continued the matter for hearing.

¶ 11 In its response to defendant's motion, plaintiff asserted, "This litigation began as an emergency motion because Defendant[ ] began to take action on the land, despite indicating they would not." Thus, plaintiff "filed to the best of [its] knowledge as to the parties and issues at bar." Further, plaintiff asserted, defendant agreed "there [was] a parcel under dispute [that] is owned by similar Plaintiff's [*sic*]." Defendant nevertheless sought dismissal, "which [would] only result in

having a new cause of action levied, which [would] only further delay the outcome that both sides are working towards." Plaintiff asserted it had been diligent in its attempt to settle the matter with the appropriate plaintiffs, had requested from defendant updated documentation, and was not solely to blame for the delay, because defendant had been unwilling or unable to send plaintiff an editable copy of the settlement agreement.

¶ 12    As to defendant's request for sanctions, plaintiff asserted the primary basis for defendant's request was the delay in executing the settlement agreement. On that point, plaintiff maintained it was "now dealing with multiple issues to resolve [the] matter," including the resignation of one of the trustees; the transfer of that trustee's obligations to a bank; a question of who could legally sign the settlement agreement in light of that change; and the fact that one of the trustees had special needs, lived in Missouri, and was dependent on benefits, requiring scrutiny of the distribution of any money to ensure her benefits were continued. Plaintiff also argued it had a good-faith basis when it filed suit, based "on [its] knowledge and belief of the situation for which suit was filed." Finally, in response to defendant's argument that sanctions were appropriate because plaintiff's actions had increased the cost of the litigation, plaintiff asserted it offered to again continue the matter, to have the court sign the deed, or to dismiss the matter without prejudice while the matter was resolved.

¶ 13    Nowhere in plaintiff's written response did it dispute defendant's assertions that it was the wrong plaintiff to bring the complaint or that the complaint did not correctly identify the parcel of land. Nor did plaintiff request leave to amend its complaint to name the proper plaintiffs and correctly identify the parcel at issue.

¶ 14    In his reply, defendant emphasized that plaintiff did not deny the bases for his motion. Rather, plaintiff sought to excuse its failure to correctly identify the parcel by claiming the case

had been filed as an emergency. However, "[a] basic search of the land records in this matter would have revealed that Plaintiff [did] not own the property which share[d] a boundary line with the property purchased by Defendants [*sic*] in December 2020." Further, defendant asserted, plaintiff was not aware of its mistake until defendant's attorney researched and explained the misidentification to plaintiff's attorney. According to defendant, the complaint was deficient as a matter of law, because there was no dispute over the property that was identified in the complaint and, therefore, by extension, plaintiff did not have standing to bring the action.

¶ 15    Defendant also disputed plaintiff's characterization of the history of the case, contending plaintiff misrepresented its attorney's efforts to resolve it. Defendant alleged that, after the settlement conference, his attorney reached out to plaintiff's attorney for a status on the deed and settlement agreement. Plaintiff's attorney indicated he would prepare the documents but later asked defendant's attorney to prepare them. Since that time, defendant's attorney had routinely followed up with plaintiff's attorney to correctly identify the parties and who would sign on their behalf. On July 19, 2021, defendant's attorney sent to plaintiff's attorney a first draft of the settlement agreement. Two months later, plaintiff's attorney contacted defendant's attorney and asked if defendant's attorney had obtained signatures from the proper parties. Defendant's attorney responded that she had not and would not attempt to do so (because they were represented by plaintiff's attorney). Thus, defendant asserted, the five-month delay was solely attributable to plaintiff's lack of due diligence, and it was not until defendant filed his motion to dismiss and for sanctions "that [p]laintiff suddenly attempted to contact the appropriate parties and acquire the correct signatures." According to defendant, it was still unclear who the appropriate parties were to the settlement agreement and deed. Defendant also stated that he never received a request for an editable copy of the settlement agreement and deed. Finally, defendant maintained that plaintiff

was "now asking for even more time to correct a myriad of problems it should have been aware of months ago had it done the work necessary to proceed correctly with this case." Defendant contended he had, therefore, expended "an unnecessary amount of attorney's fees for an agreement that was reached at the [s]ettlement [c]onference with the court on June 21, 2021."

¶ 16 At the January 5, 2022, hearing on defendant's motion, the circuit court asked plaintiff's attorney whether he disagreed with defendant's assertion that both the plaintiff and the parcel were misidentified, and he responded, "Judge, I don't think I disagree with any part of it." The court asked plaintiff's attorney why plaintiff had refused to correct its pleadings, and he responded, "I don't know that I would say we refused, Judge. The similar plaintiffs are in both trusts." The court stated it "appreciate[d] the fact that the members of [plaintiff were] likely beneficiaries under the trust" but found defendant's point was well taken. The court explained that plaintiff had initiated a complaint "by someone who doesn't have standing and is a limited partnership who lacks standing." Further, it found plaintiff had "pled negligently." In other words, plaintiff misidentified the parcel at issue and had done nothing to attempt to correct it.

¶ 17 Plaintiff responded that there was no question that a piece of property was in dispute, and it reiterated that the parties were trying to resolve that dispute. If the court dismissed the complaint, it would return the parties to their positions as of March or April 2021 and the parcel at issue would still be in dispute.

¶ 18 The court granted the motion to dismiss and imposed $810 in sanctions (which was calculated by multiplying three hours of court time by defendant's attorney's $270 hourly rate). The court recognized that the complaint would eventually be revisited, namely, in a new proceeding. But the court stated it could not give relief to plaintiff but, rather, was compelled to dismiss the case with prejudice because plaintiff lacked standing. The court indicated it "would

have been more understanding if [plaintiff's] response to the motion to dismiss would have been to seek leave to file an amended complaint." Instead, the court noted, plaintiff "doubled down" and did not seek leave to amend. As to sanctions, the court explained that, had plaintiff sought leave to amend, instead of litigating the motion to dismiss, it would have denied defendant's request for sanctions.

¶ 19     The next day, the circuit court entered a written order, stating, in part, that defendant's motion to dismiss and for sanctions had been granted for the reasons stated on the record.

¶ 20     On February 2, 2022, plaintiff moved to reconsider the dismissal and sanctions. Plaintiff contended its misidentification of itself as the plaintiff was a misnomer and, under sections 2-401, 2-616(a), and 2-1005(g) of the Code (735 ILCS 5/2-401, 2-616(a), 2-1005(g) (West 2020)), it was entitled to correct it at any time before final judgment. According to plaintiff, the circuit court therefore abused its discretion when it dismissed the complaint with prejudice as opposed to allowing plaintiff the opportunity to cure the deficiencies in the complaint, particularly given there was a "justiciable dispute" at issue in the complaint. Moreover, plaintiff asserted, the circuit court's dismissal of the complaint with prejudice frustrated the strong public policy favoring settlements, given the settlement posture of the case.

¶ 21     Plaintiff also took issue with the circuit court's sanctions order, arguing the award could not "be reasonable in this case because [d]efendant filed its motion [(to dismiss)] after [p]laintiff agreed that it would dismiss the complaint, without prejudice, while the settlement details could be effectuated." According to plaintiff, a dismissal with prejudice was improper under the circumstances. Citing Illinois Supreme Court Rule 219 (eff. July 1, 2002) and cases applying it, plaintiff argued defendant had not shown there was a deliberate, contumacious, or unwarranted disregard for the circuit court's authority, such that sanctions were warranted. Nor had defendant

established, under Rule 137, that sanctions were warranted, "because *** the merits of Plaintiffs [*sic*] complaint did not proceed past summary dismissal." Plaintiff maintained that the purpose of Rule 137 was to prevent frivolous and false lawsuits that have no legal or factual foundation, "not to penalize litigants and their attorneys simply because they were zealous but unsuccessful." Plaintiff concluded the circuit court's ruling "violate[d] the American Rule on attorney fees," because the merits of the complaint were never addressed. Further, the court's ruling "was penal in nature and afoul of precedent and not reasonable given the settlement posture of this case along with [p]laintiff's willing[ness] to dismiss the case without prejudice at [d]efendant's initial request."

¶ 22    Plaintiff's motion to reconsider did not affirmatively request leave to amend the complaint. Nor did plaintiff file a separate motion seeking that relief.

¶ 23    At the February 8, 2022, hearing on the motion, the circuit court told the parties it could not remember "exactly the facts" but almost immediately recalled, "[t]hey had named the wrong owner and they refused to amend their complaint and they dragged this thing out." The court noted the case was filed in April 2021 and asked when plaintiff's attorney became aware of the fact the complaint misidentified the plaintiff and real estate at issue. Defendant's attorney responded that the misidentifications had been discussed at the settlement conference, which occurred in June 2021. The court noted plaintiff's motion did not allege new facts or assert a change in the law. Thus, the court asked what plaintiff was asking it to reconsider. Plaintiff began to explain the basis for its motion was the strong public policy in favor of amendments to pleadings. The court interjected and denied the motion, stating as follows:

> "You're not seeking to amend. You're not seeking to amend today. You never sought to seek [*sic*] to amend then.

When [defendant] first brought [his] motion, had you sought leave to amend then, I might have paused and suggested let's see what you're gonna do and I'll consider it and enter and continue [his] motion.

But you didn't do that.

Your response was, this doesn't matter because we know what we're talking about. We understand what the dispute is.

We had a settlement and you didn't want to settle, ultimately.

I mean[,] so in the meantime, you're wasting [defendant's] time and money. That's why your client got sanctioned, because you are spinning [his] wheels and that's inappropriate.

I mean, you can't file a complaint that's worthless and know it for at least nine months and then come back and ask the Court to forgive that because, [defendant's] attorney] knows that we know what we're talking about.

I'm sorry, counsel. There is no basis to grant your motion to reconsider. There is nothing to change the Court's opinion.

Coming in here and saying I should have given you a chance to do something that you've never even asked leave to do is just further evidence of a lack of diligence on your part."

¶ 24    This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26    On appeal, plaintiff contends the circuit court erred by (1) dismissing with prejudice its complaint and (2) ordering plaintiff to pay as sanctions $810 to defendant. Before addressing the merits of plaintiff's contentions, we must first address two preliminary matters.

¶ 27        A. The Parties' Requests That We Strike Portions of the Other's Brief

¶ 28    In his brief, defendant asks us to strike portions of plaintiff's statement of facts because it includes facts that are irrelevant and were neither presented to the circuit court nor supported by the record. We decline to strike any portion of plaintiff's brief. The record here is simple, and plaintiff's reference to the complained-of facts has not hindered our review. *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 15. Instead, we will disregard any assertions of fact that are not supported by the record.

¶ 29    After defendant filed its brief, plaintiff filed in this court a "motion to strike unsupported arguments from defendants' [*sic*] response brief," and we ordered that motion to be taken with the case. In the motion, plaintiff asks us to strike the entire conclusion section of defendant's brief because it does not contain citations of the record. Plaintiff also asks us to strike defendant's reference to a now-pending circuit court case, Kane County case No. 22-CH-6, in which the deficiencies in plaintiff's complaint were purportedly corrected, because that matter is referenced nowhere in the record.

¶ 30    We deny plaintiff's motion to strike and decline to strike the conclusion section of defendant's brief. With the exception of defendant's reference to Kane County case No. 22-CH-6, discussed below, the assertions made by defendant are supported by the record. Though he did not include any citations in the conclusion section, his failure to do so has not hindered our review. See *id.*

¶ 31    Additionally, we decline to strike defendant's reference to Kane County case No. 22-CH-6 and instead take judicial notice of those proceedings. Admittedly, the record is devoid of any reference to that case and does not contain the complaint or any other documents from that case. However, "[a]n appellate court may take judicial notice of readily verifiable facts if doing so will

aid in the efficient disposition of a case, even if judicial notice was not sought in the [circuit] court." (Internal quotation marks omitted.) *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37. Such readily verifiable facts include entries on a court's docket showing that a lawsuit involving a similar (if not the same) dispute has been filed. See *Bayview Loan Servicing, LLC v. Starks*, 2022 IL App (2d) 210056, ¶ 14 (complaint and motion to dismiss were matters of public record and, therefore, could be judicially noticed); *Kramer v. Ruiz*, 2021 IL App (5th) 200026, ¶ 32 n.3 (online court docket); *People v. Johnson*, 2020 IL App (1st) 171638, ¶ 29 (computer printout of court docket); *Metropolitan Life Insurance Co. v. American National Bank & Trust Co.*, 288 Ill. App. 3d 760, 764 (1997) (judicial notice of a money judgment and judgment lien, which were "public documents that [were] included in the records of other courts"). And we may take judicial notice of such records even without an explicit request. See *In re N.G.*, 2018 IL 121939, ¶ 32 (appellate court was "well within [its] authority" to *sua sponte* judicially notice court records).

¶ 32    The Kane County circuit clerk's online court records (Kane County Circuit Clerk, https://cic.countyofkane.org/pages/online-court-records.aspx (last visited Oct. 28, 2022) [https://perma.cc/QYQ9-2GTU]) indicate that, *after the circuit court dismissed the complaint in this case*, on January 18, 2022, the Landmeier trusts—the four entities defendant contended were the proper plaintiffs to bring this action—filed against defendant a complaint to quiet title. The case was docketed as Kane County case No. 22-CH-6, and the complaint was filed by the same attorney who has at all times represented plaintiff in this matter. According to defendant, the complaint in that case seeks the same relief sought in this case, *i.e.*, to quiet title to the tract of real estate on the eastern side of the land defendant purchased in December 2020. Though plaintiff has had two opportunities (in its reply brief and its motion to strike) to dispute the accuracy of

defendant's assertion that the complaint in case No. 22-CH-6 seeks the same relief, plaintiff has not done so. Accordingly, we take judicial notice that there is currently pending an action by the Landmeier trusts to quiet title to the parcel of land (apparently) at issue in this complaint. We now turn to the merits.

¶ 33        B. The Circuit Court Properly Dismissed With Prejudice the Complaint

¶ 34    Plaintiff first contends the circuit court erred by dismissing with prejudice its complaint. Specifically, plaintiff argues that its identification of itself was a misnomer, which, under section 2-401 of the Code, is not a basis for dismissal. Rather, it was entitled to correct that misnomer by amendment at any time before or after final judgment, and, therefore, the court erred by dismissing the complaint with prejudice, as opposed to allowing plaintiff the opportunity to amend. Plaintiff also argues the court erred by dismissing the complaint, where defendant's motion was filed under section 2-619.1 but did not comply with that statute and where defendant failed to support his motion with an affidavit.

¶ 35    Initially, we must properly frame the issue presented by plaintiff, because it affects our standard of review. This case comes before us from the dismissal of the complaint under sections 2-615 and 2-619 of the Code. Thus, at first glance, our review would be *de novo*. See *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶¶ 25, 31.

¶ 36    However, the question presented is not whether the circuit court properly dismissed the complaint because either it failed to state a claim, it was defeated by some affirmative matter, or both occurred. See 735 ILCS 5/2-615, 2-619 (West 2020). In the circuit court, plaintiff never once disputed that the underlying bases for defendant's motion—that plaintiff was not the proper party to bring the complaint and that the complaint identified the wrong parcel of land—were well founded.

¶ 37    In its initial brief to this court, plaintiff yet again failed to challenge the underlying basis for the circuit court's ruling. Rather, it argued dismissal was improper (1) under section 2-401 of the Code, because plaintiff's identification of itself as the plaintiff was a misnomer, which is not a basis for dismissal and can be corrected by amendment at any time, and (2) because of technical (albeit important) deficiencies in defendant's motion.

¶ 38    It was not until plaintiff filed its reply brief that plaintiff challenged the circuit court's finding that it lacked standing to bring the complaint. It has therefore forfeited that contention. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (arguments may not be raised for the first time in a reply brief); *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 32 (arguments not raised in the circuit court are forfeited). Plaintiff's arguments in the circuit court and in its initial brief make clear that it is challenging only the circuit court's decision to dismiss the complaint with prejudice, as opposed to without prejudice. In other words, the issue is whether the court should have allowed plaintiff to amend the complaint.

¶ 39    This state has a strong public policy in favor of resolving disputes on their merits, as opposed to on deficiencies in a party's pleadings. See *Avakian v. Chulengarian*, 328 Ill. App. 3d 147, 154 (2002). Thus, courts must liberally construe the Code insofar as it relates to amendment of pleadings. *Hoffman v. Nustra*, 143 Ill. App. 3d 259, 265 (1986). The decision to allow amendments is a matter for the circuit court's discretion. *Id.* at 266. Thus, we may reverse the circuit court's decision to dismiss plaintiff's complaint with prejudice only if the court's decision was unreasonable. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 40    As noted, plaintiff invokes section 2-401 of the Code in support of its argument that the complaint should not have been dismissed with prejudice. Section 2-401(b) of the Code states, "[m]isnomer of a party is not a ground for dismissal but the name of any party may be corrected

at any time, before or after judgment, on motion, upon any terms and proof that the court requires." 735 ILCS 5/2-401(b) (West 2020). The converse of the concept of misnomer is mistaken identity. See *Guiffrida v. Boothy's Palace Tavern, Inc.*, 2014 IL App (4th) 131008, ¶ 36. The determination of whether a case involves a misnomer or mistaken identity is likewise reviewed for an abuse of discretion. *Id.*

¶ 41     The First District recently explained the import of these distinct concepts:

"This distinction [(between misnomer and mistaken identity)] is important because, if this case involves a misnomer, which 'is a mistake in the name of [*sic*] the provision of an incorrect name,' then section 2-401(b) of the Code [citation] applies. [Citation.] Conversely, if this matter involves a mistaken identity, then section 2-616 of the Code governs." (Internal quotation marks omitted.) *Pennymac Corp. v. Jenkins*, 2018 IL App (1st) 171191, ¶ 25.

Most cases addressing misnomer arise in the context of misnamed, misidentified, or mischaracterized *defendants*. *Id.* ¶ 26. But the same rules apply to cases in which a plaintiff misnames itself. *Id.* ¶ 27.

¶ 42     "To determine whether a case involves a misnomer or mistaken identity, we must determine the intent of the plaintiff." *Guiffrida*, 2014 IL App (4th) 131008, ¶ 36. We do not look solely to the plaintiff's subjective intent as to whom he or she intended to sue. *Id.* Rather, our primary focus is "the objective manifestations of that intent as contained in the record." (Internal quotation marks omitted.) *Id.* The most probative evidence of the plaintiff's intent is the party named in the complaint, and, if that party actually exists but is not a real party in interest, then a court can conclude the plaintiff mistakenly sued the wrong party. *Id.*

¶ 43    Initially, we note plaintiff did not raise the issue of misnomer until its motion to reconsider the complaint's dismissal. "Issues cannot be raised for the first time in the [circuit] court in a motion to reconsider and issues raised for the first time in a motion to reconsider cannot be raised on appeal." *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13. Plaintiff could have raised misnomer in its response to the motion to dismiss but did not. Accordingly, we find plaintiff has forfeited its argument. *Triumph Community Bank v. IRED Elmhurst, LLC*, 2021 IL App (2d) 200108, ¶ 48 ("A party may not raise a new legal theory for the first time in a motion to reconsider.").

¶ 44    Forfeiture aside, we conclude this case involves a clear case of mistaken identity, not a mere misnomer. Here, the complaint named "Asher Farm Limited Partnership," a legal entity that actually exists, as plaintiff and alleged it owned and farmed the land adjacent to that purchased by defendant in December 2020. There is no dispute that the proper parties to bring this action were the Landmeier trusts, which are actual distinct legal entities that owned the adjacent land. Under these circumstances, the parties' intent is not clear, because the named plaintiff and the proper plaintiffs have distinct interests. One farms the land and the others own it. Though, as the circuit court recognized, there may be some overlap between the entities at issue, it is clear that this case involves mistaken identity, as opposed to misnomer. See *Pennymac*, 2018 IL App (1st) 171191, ¶ 30.

¶ 45    *Bristow v. Westmore Builders, Inc.*, 266 Ill. App. 3d 257 (1994), on which plaintiff relies, is distinguishable. There, the plaintiff was a sole proprietor but sued in the name of a corporation that did not, in fact, exist. *Id.* at 261. Here, the named plaintiff and the proper plaintiffs were actual distinct legal entities.

¶ 46    Because this case involves mistaken identity, we must analyze the dismissal with prejudice under section 2-616 of the Code, not section 2-401. *Pennymac*, 2018 IL App (1st) 171191, ¶ 25. Section 2-616(a) provides that amendments to pleadings may be allowed, on just and reasonable terms, "[a]t any time *before final judgment*." (Emphasis added.) 735 ILCS 5/2-616(a) (West 2020). Thus, section 2-616(a) governs prejudgment requests to amend. See *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶¶ 13-14. Prejudgment requests to amend should be liberally granted, and, when deciding whether to grant leave, courts should consider whether (1) the amendment cures a defect in the pleadings, (2) the other party is prejudiced or surprised by the proposed amendment, (3) the proposed amendment is timely, and (4) there were previous opportunities to amend the pleadings. *Id.* ¶ 13.

¶ 47    However, these factors do not apply to postjudgment requests to amend. *Id.* ¶ 14. "After final judgment, a plaintiff has no statutory right to amend a complaint and a court commits no error by denying a [postjudgment request] to amend." *Id.* After judgment is entered, a party cannot amend his or her complaint to add new claims or theories or to correct other deficiencies. *Id.* Rather, he or she can amend only to conform the pleadings to the proofs. *Id.* (citing 735 ILCS 5/2-616(c) (West 2010)).

¶ 48    Thus, the threshold question is whether plaintiff sought leave to amend before or after final judgment. Here, the circuit court dismissed the complaint with prejudice, and plaintiff did not request leave to amend until its postjudgment motion to reconsider. (Its request was implied by its reliance on section 2-401, but plaintiff never affirmatively requested leave to amend.) Thus, the dismissal order was a final judgment, and plaintiff's request for leave was not timely. *Id.* ¶ 15. Upon entry of the dismissal order, plaintiff no longer had a statutory right to amend the complaint. *Id.* Rather, it could amend the complaint only to conform the pleadings to the proofs, not to correct

other deficiencies. *Id.* ¶ 14. Accordingly, the circuit court did not abuse its discretion by dismissing the complaint with prejudice.

¶ 49 We briefly address and reject plaintiff's argument that defendant's motion to dismiss was deficient and should not have been granted. Plaintiff asserts that defendant's motion failed to comply with section 2-619.1 of the Code, because, in one part of the motion, defendant sought dismissal under sections 2-615 "and[/]or" 2-619(a)(2). See *Reynolds*, 2013 IL App (4th) 120139, ¶¶ 20-21 (hybrid motion practice is not proper under section 2-619.1 and circuit courts should *sua sponte* reject such motions). Additionally, plaintiff asserts defendant failed to support his section 2-619 motion with an affidavit, such that he did not meet his burden to establish plaintiff lacked standing. See *id.* ¶ 37.

¶ 50 Plaintiff, however, never brought these purported deficiencies to the circuit court's attention. Moreover, plaintiff's attorney *agreed* the factual bases for defendant's motion, *i.e.*, that the Landmeier trusts owned the land adjacent to that purchased by defendant and that the complaint identified the wrong parcel, were accurate. Plaintiff has therefore forfeited its argument. *Rogers*, 2016 IL App (2d) 150712, ¶ 32.

¶ 51 We also briefly address and reject plaintiff's argument, made for the first time in its reply brief, that its lack of legal ownership of one of the adjoining parcels has no bearing on its standing to bring its complaint. As noted above, plaintiff forfeited this argument by failing to raise it at any time before its reply brief in this court. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Rogers*, 2016 IL App (2d) 150712, ¶ 32. Moreover, this position is inconsistent with the position plaintiff took in the circuit court. At the hearing on the motion to dismiss, plaintiff's attorney stated plaintiff did not "disagree" with the assertions in defendant's motion. See *Unique Insurance Co. v. Tate*, 2022 IL App (1st) 210491, ¶ 22 (party is estopped from taking a position on appeal that is inconsistent

with that which the party took in the circuit court). Further, even if it had timely raised this argument, there was never any dispute that plaintiff misidentified the parcel of real estate at issue. See *Brandhorst v. Johnson*, 2014 IL App (4th) 130923, ¶ 37 (though not one of the five elements of an adverse-possession claim, the claimant must clearly and convincingly prove "*the exact location of the boundary line to which they claim*" (emphasis added)). Plaintiff contends this deficiency was inconsequential because the identification of the parcel is not an element of the claim. But this overlooks the fact that the circuit court could not have awarded to plaintiff the parcel identified in the complaint, because that was not the parcel to which it laid claim. Simply put, it was a deficiency that needed to be corrected, and plaintiff refused to do so.

¶ 52      C. The Circuit Court Did Not Abuse Its Discretion by Awarding Sanctions

¶ 53      Plaintiff also contends the circuit court abused its discretion when it imposed sanctions of $810. Specifically, plaintiff argues the circuit court had no factual or legal basis on which to impose the sanctions and violated the American rule on attorney fees. We are not persuaded.

¶ 54      "Rule 137 allows a court to impose sanctions against a party or counsel who files a pleading or motion that is not well grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or is interposed for any improper purpose." *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 43. The rule's purpose is to prevent the filing of false or frivolous lawsuits, and it places on a party and his or her attorney a duty to make a reasonable inquiry into the facts to support a legal claim before pleadings are filed. *A&A Acoustics, Inc. v. Valinsky*, 202 Ill. App. 3d 516, 522 (1990). The duty to make a reasonable inquiry continues after a suit is filed, and an attorney is professionally obligated to dismiss a baseless suit, even over his or her client's objection, when the attorney learns the client no longer has grounds for a case. *Id.*

¶ 55    We conclude the circuit court did not abuse its discretion by imposing $810 in sanctions (equivalent to three hours of defendant's attorney's time). The circuit court sanctioned plaintiff because it refused to request leave to amend its complaint, even though it admitted its complaint was deficient in the manner alleged by defendant, and instead litigated the well-founded motion to dismiss with a nonresponsive position.

¶ 56    The record wholly supports the circuit court's decision. It shows that plaintiff became aware of the deficiencies in its complaint, at the latest, at the June 2021 settlement conference. Instead of filing a simple motion for leave to amend, together with an amended complaint correcting already-identified deficiencies, plaintiff chose to persist in its defective complaint for the next five months, until defendant filed his motion to dismiss and for sanctions, which again identified the same deficiencies in plaintiff's complaint and would not have been necessary had plaintiff amended the complaint. Plaintiff again chose not to file a simple motion for leave to amend. Instead, it filed a response to defendant's motion that did not contest the bases for dismissal but, rather, nonresponsively asserted dismissal was improper because the parties had settled and dismissal would return them to their prelitigation positions.

¶ 57    Here, plaintiff's actions in this case after it became aware of the deficiencies in its complaint needlessly increased the costs of the litigation. See *Kellett v. Roberts*, 276 Ill. App. 3d 164, 170-71 (1995). We are perplexed by plaintiff's refusal to request leave to amend its complaint, especially given a new complaint to quiet title to the parcel in dispute has been brought in the name of the proper plaintiffs. Even if, as plaintiff asserts, this matter was filed as an emergency, thus limiting plaintiff's opportunity to properly formulate the complaint, the reasonable course of action would have been to request leave to amend as soon as it became aware of the deficiencies or, at the latest, in response to the motion to dismiss. See *Valinsky*, 202 Ill. App. 3d at 522. Instead,

plaintiff's position required the parties to appear for a contested hearing on a well-founded motion that was opposed only by a nonresponsive position. Under these circumstances, we cannot find the circuit court's sanctions award was unreasonable. *Blum*, 235 Ill. 2d at 36.

¶ 58 Plaintiff argues the circuit court lacked a factual or legal basis for its sanctions award. We disagree. As noted above, Rule 137 permits a court to impose sanctions when a party's actions needlessly increase the cost of litigation, and the record supported the circuit court's determination here. We also reject plaintiff's argument that the sanctions order violated the "American rule" on attorney fees, as a sanction is *not* a fee award. See *Toland v. Davis*, 295 Ill. App. 3d 652, 658 (1998).

¶ 59 We likewise reject plaintiff's assertion that the sanctions order was "an abuse of discretion because the merits of Plaintiffs [*sic*] complaint did not proceed past summary dismissal." In support of this assertion, plaintiff cites *Toland*. Admittedly, the *Toland* court recognized that no determination was ever made on the merits of the plaintiffs' claims against the party who was seeking sanctions. *Id.* at 657. But nothing in *Toland*'s analysis supports plaintiff's position that sanctions may not be imposed if the complaint never makes it past the dismissal stage. In *Kellett*, we rejected a similar argument, noting,

> "Such a construction of the rule [(that a motion for sanctions can be filed *at any time*)] is consistent with and promotes the rule's prior objective to provide a plain, speedy, and efficient remedy. To accept [the defendant's attorneys'] position would preclude the filing of the motion for sanctions until after the frivolous proceedings had been finally terminated. Such an interpretation would further delay the timely disposition of frivolous matters, increase the cost of litigation, and constitute an inefficient use of judicial resources. [The defendant's attorneys'] interpretation of the rule provides a remedy that is

neither plain, nor speedy, nor efficient. We cannot contemplate that the supreme court could have intended such a result." *Kellett*, 276 Ill. App. 3d at 171.

Simply put, nothing in Rule 137 prevents the imposition of sanctions when a case has not moved past the dismissal stage.

¶ 60    Plaintiff also asks us to set aside the sanctions award because the circuit court did not comply with Rule 137(d), which states, "[w]here a sanction is imposed under this rule, the judge shall set forth with specificity the reasons and basis of any sanction so imposed in either the judgment order itself or in a separate written order." Ill. S. Ct. R. 137(d) (eff. Jan. 1, 2018). This argument has no merit.

¶ 61    The purpose of paragraph (d) of Rule 137 "is to allow the reviewing court to make an informed and reasoned review of the decision to impose sanctions." *Kellett*, 276 Ill. App. 3d at 172. "[T]he better practice is for the [circuit] court to explicitly state its reasons for the sanctions in [a] written order," but strict compliance with Rule 137(d) is not required when the record otherwise establishes the circuit court's reasoning for the award. *Id.* Here, the court's written order expressly incorporated the court's detailed explanation, on the record, of why it found sanctions were appropriate in this case. See *Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant & Pancake House, Inc.*, 2021 IL App (1st) 192523, ¶ 79. We find this sufficient to comply with the rule and, therefore, decline to set aside the sanctions award. *Id.*

¶ 62                    D. Defendant's Request for Rule 375 Sanctions

¶ 63    In his brief, defendant asks that we impose appellate sanctions against plaintiff under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). He argues that plaintiff's maintenance of this appeal while also pursuing the same action, this time with the proper parties, in the circuit court

(Kane County case No. 22-CH-6) has needlessly increased the cost of litigation or is intended to harass defendant.

¶ 64    Plaintiff does not specifically respond to defendant's request for sanctions. Rather, its motion to strike, discussed above, requested that we strike the section of defendant's brief that contains the request.

¶ 65    Under Rule 375(b), this court has discretion to impose sanctions against any party or the party's attorney if, after considering an appeal, we determine the appeal "is frivolous, *** was not taken in good faith, [or was taken] for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 375 (eff. Feb. 1, 1994); see *Garlick*, 2018 IL App (2d) 171013, ¶ 59. We judge whether an appeal is frivolous based on an objective standard. *Id.* An appeal is frivolous when "it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). "The purpose of Rule 375(b) is to condemn and punish the abusive conduct of litigants and their attorneys who appear before us." (Internal quotation marks omitted.) *Garlick*, 2018 IL App (2d) 171013, ¶ 59.

¶ 66    We conclude the appeal here was frivolous and not taken in good faith. Plaintiff's argument regarding the denial of leave to amend the complaint is premised entirely on a mischaracterization of the record. Indeed, plaintiff maintains the circuit court refused its request for leave to amend the complaint. However, the record shows it was plaintiff who refused to *ask* for leave amend its plainly defective complaint until it was too late and despite having ample opportunity to do so. We fail to see how a court can abuse its discretion by not granting a request that was never timely made.

¶ 67    Moreover, 13 days after the complaint was dismissed, before plaintiff moved to reconsider, plaintiff's attorney filed a new complaint, which named the proper plaintiffs, *i.e.*, the Landmeier trusts, and sought the same relief sought in this matter. Plaintiff nevertheless filed a motion to reconsider, which, if granted, would have resulted in two actions pending for the same relief.

¶ 68    We find the filing of the new action—with the proper plaintiffs and the correct parcel identified—is an implicit admission that the circuit court's dismissal of plaintiff's complaint was correct. Additionally, as with its motion to reconsider, if we were to grant plaintiff the relief it seeks—reversal of the circuit court's order with an instruction to allow plaintiff to amend its complaint—there would be pending in the circuit court two actions between similar parties seeking the same relief.

¶ 69    Further, plaintiff's appeal pushes a legal theory—misnomer—that it plainly forfeited by not raising it until its motion to reconsider and, in any event, clearly does not apply. Additionally, plaintiff raises several arguments that are based on clearly inapposite authorities. For example, plaintiff cites section 2-1005(g) of the Code in support of its argument that "Illinois civil procedure allows complaints [to] be amended, even after judgment." Section 2-1005 has no application here. That statute governs summary judgment and plainly states that amendments to pleadings may be made on just and reasonable terms "after *** *summary judgment*." (Emphasis added.) 735 ILCS 5/2-1005(g) (West 2020). For another example, in regard to the sanctions order, plaintiff cites Illinois Supreme Court Rule 219 (eff. July 1, 2002) and cases interpreting that rule. However, Rule 219 governs *discovery* sanctions, which were never at issue here.

¶ 70    Under these circumstances, we cannot conclude a reasonable, prudent attorney would have brought this appeal. See *Penn v. Gerig*, 334 Ill. App. 3d 345, 357 (2002) (an appeal is frivolous if it would not have been brought in good faith by a reasonable, prudent attorney). Accordingly, we

grant defendants request that we impose sanctions. Within 14 days, defendant shall file with this court a statement of reasonable expenses and attorney fees incurred as a result of this appeal. Plaintiff and its attorneys shall then have seven days to respond. This court will then file a supplemental order determining the amount of sanctions. See *id.*

¶ 71                                    III. CONCLUSION

¶ 72    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 73    Affirmed.

*Asher Farm Ltd. Partnership v. Wolsfeld*, **2022 IL App (2d) 220072**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 21-CH-83; the Hon. Kevin T. Bush, Judge, presiding. |
| **Attorneys for Appellant:** | C. Nicholas Cronauer and Bradley D. Melzer, of Cronauer Law, LLP, of Sycamore, for appellant. |
| **Attorneys for Appellee:** | Carrie L. Thompson, of Foster, Buick, Conklin, Lundgren & Gottschalk, LLC, of Sycamore, for appellees. |